CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 17 2010
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, ) ) ) | |
| Plaintiff, ) | Civil Action No. 5:09cv00088 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| AARON ROBERT ARGENBRIGHT, ) | By: Samuel G. Wilson |
| Defendant. ) | United States District Judge |

This is an action by plaintiff, the Automobile Insurance Company of Hartford, Connecticut ("Hartford"), pursuant to this court's diversity jurisdiction[1] against defendant, Aaron Robert Argenbright ("Argenbright"),[2] seeking a declaratory judgment that it does not afford coverage for injuries Argenbright sustained while a passenger in an underinsured motor vehicle under an Automobile Insurance Policy (the "policy" or "Hartford's policy") that Hartford issued to Argenbright's father and stepmother. To qualify as an "insured" for underinsured motorists coverage ("UIM coverage") under the policy, Argenbright must have been either a "named insured," in a covered auto, or a resident member of his father's household. It is uncontested that Argenbright was not a named insured or in a covered auto, and both parties have moved for summary judgment on the single dispositive issue of whether Argenbright was a resident member of his father's household when the accident occurred. The court concludes that the evidence,

---

[1] Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because Hartford is a Connecticut corporation with its principal place of business in that state, Argenbright is a resident of Virginia, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

[2] The complaint also named Brethren Mutual Insurance Company ("Brethren") as a defendant, but the parties stipulated to a dismissal with prejudice of all claims by and against Brethren. The court entered an order dismissing the claims by and against them from the suit, and as it is no longer relevant to the proceedings before the court, the court will not discuss Brethren's earlier involvement in the case.

which is mainly undisputed, establishes that Argenbright was not a resident member of his father's household, and therefore, not an insured for UIM coverage under the policy.

## I.

Hartford issued an automobile policy (with a policy period from September 23, 2008, to September 23, 2009) to Ernest and Donna Argenbright, Argenbright's father and stepmother, as the named insureds. The policy contains uninsured and UIM coverage for "Bodily injury" sustained by an insured that is caused by an accident. The policy defines insured as meaning the named insured, a person in a covered auto, or any "family member." (Policy, Ex. A, 8.) The policy defines "family member" as "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household . . . ." (Policy, Ex. A, 1.)

On May 3, 2009, Argenbright was involved in a single car accident while a passenger in a 2003 Chevy Cavalier owned and operated by his friend, Johnathan Wayne Jarrett ("Jarrett"). The insurance policy that Nationwide Insurance Company had issued for the Cavalier did not fully cover Argenbright's alleged damages,[3] so Argenbright informed Hartford that he was seeking UIM coverage under Hartford's policy.[4] Hartford responded that it did not owe him UIM coverage under its policy because he was not an insured on the date of the accident since he was not a named insured, in a covered auto, or a resident member of the named insureds' household.

The parties engaged in discovery, and the following facts are undisputed. Before

---

[3] That policy contains limits of $25,000 per person/per occurrence.

[4] Argenbright also claims he is entitled to medical expense coverage. Because the court finds he is not an insured, it also finds he is not entitled to medical expense coverage under the policy.

2

graduating high school in 2003, Argenbright stayed with his father roughly half of the time and with his mother, Cindy Lowery, the other half. After graduating, Argenbright lived with his friend Cody Thornton ("Thornton") in an apartment for a few months, returning occasionally to his father's house. After living with Thornton for a few months, however, Argenbright returned to his father's residence. By 2005, Argenbright was spending "three or four nights" each week at the residence of his girlfriend, Jelena Golladay ("Golladay"), although he would occasionally stay at his mother's house, his father's house, or with Jarrett. This continued through the early summer of 2008, but following an argument with Golladay, Argenbright moved out of Golladay's house and in with Jarrett for two or three months.

Later that summer, Argenbright began dating another woman, April Rankin ("Rankin"), and he began spending some nights with her at her father's residence and other nights with Golladay at Golladay's residence. When Rankin became pregnant, Argenbright ended his relationship with Golladay and began staying at Rankin's father's house, in Argenbright's words, "pretty consistently." On occasion, however, he would also stay with either Jarrett or his father.

In the spring of 2009, Argenbright and Rankin found a house to rent in Churchville, Virginia, (the "Churchville house"). They signed a month-to-month lease on April 4, 2009, and began establishing utility accounts in Argenbright's name, furnishing the house, and moving their personal belongings there. While waiting for their landlord to repair the Churchville house's plumbing, Argenbright and Rankin stayed with Argenbright's father. On the date of the accident, Argenbright and Rankin had been staying with his father a few weeks and were in the process of moving into the Churchville house. When the accident occurred, Argenbright gave the police and his health care providers the Churchville address as his permanent address.

Argenbright claims he was a resident member of his father's household on the date of the accident and is therefore entitled to coverage under the policy. Hartford filed this suit seeking a declaratory judgment that it does not afford UIM coverage to Argenbright for the accident because he was not an insured under the policy since he was not a named insured, in a covered auto, or a resident member of the named insureds' household.

## II.

Argenbright has moved for summary judgment[5] on the ground that, as a resident member of his father's household, he was an insured under the policy, and Hartford has moved for summary judgment on the ground that Argenbright was not a resident member of his father's household and, therefore, not an insured under the policy. In Virginia, the test for determining who is a resident member of a given household requires a showing by the party seeking coverage that he was part of "a unit of permanent and domestic character, under one roof," USAA Cas. Ins. Co. v. Hensely, 465 S.E.2d 791, 793-94 (Va. 1996), with "a reasonable degree of regularity in [his] residential contacts" with that unit, Allstate Ins. Co. v. Patterson, 344 S.E.2d 890, 893 (Va. 1986). The court concludes that the uncontradicted evidence establishes that Argenbright cannot meet this test with respect to his father's household given the nomadic and transitory nature of his living arrangements. Accordingly, the court finds that Argenbright was not an insured and grants Hartford's motion.

---

[5] Summary judgment is proper "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court views the evidence and makes all reasonable inferences in the light most favorable to the nonmoving party. Sempione v. Provident Bank of Md., 75 F.3d 951, 954 (4th Cir. 1996).

4

In Virginia, a party seeking UIM coverage under an insurance policy has the burden of establishing that he or she is an insured under that policy. Many auto insurance policies, including the policy here, define an insured for purposes of UIM coverage as a person who is either the named insured, in a covered auto, or related to the named insured as well as a resident of the named insured's household. The Supreme Court of Virginia has held that "[t]he meaning of 'resident' or 'residence' . . . depends upon the context in which it is used," Hensley, 465 S.E.2d at 793 (quoting Patterson, 344 S.E.2d at 892 (quoting State Farm Mut. Auto. Ins. Co. v. Smith, 142 S.E.2d 562, 565-66 (Va. 1965))), but ordinarily "[r]esidence emphasizes membership in a group rather than an attachment to a building." Patterson, 344 S.E.2d at 893 (quoting American States Ins. Co., W. Pac. Div. v. Walker, 486 P.2d 1042, 1044 (Utah 1971).

When the word "resident" is followed by the requirement of living in "the same household, . . . [t]he word 'household' . . . connotes a settled status . . . ." Hensley, 465 S.E.2d at 793. According to the Supreme Court of Virginia, "a more settled or permanent status is indicated by 'resident of the same household' than would be indicated by 'resident of the same house or apartment.'" Id. "Whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof . . . ." Id. at 793-94. It encompasses a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness." Id. And although "a person's intent is important in determining whether he qualifies as a resident of a household, id., the definition of resident "imports the necessity of regularity as the basis of a person's status vis-à-vis the household of the named insured." Patterson, 344 S.E.2d at 893.

5

Therefore, although a person's intent to become a household member does not have to be paired with continuous residence, it "must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household; casual, erratic contacts are not sufficient." Id.

Here, Argenbright has the burden of establishing that he is an insured under the policy, but he cannot meet that burden. The evidence reveals that Argenbright has been a nomadic dweller in many houses and apartments. Argenbright himself described his circumstances as being "back and forth everywhere, really." (Argenbright Dep., 11.) Though Argenbright stayed at his father's house occasionally, his residential contacts with his father's household were casual, erratic, and unsettled. In the year preceding the accident alone, Argenbright lived with at least five people, and his stay with his father for a few weeks while waiting for the completion of repairs to his Churchville house was temporary and transitional, nothing more. It was insufficient to make him a resident of his father's household within the meaning of the policy. See Furrow v. State Farm Mut. Auto. Ins. Co., 375 S.E.2d 738, 740 (Va. 1989) (finding that the intent to stay at a parent's house on a temporary basis during a transition period is insufficient to make someone a resident of his or her parent's household).

Moreover, even when Argenbright stayed with his father, the evidence does not demonstrate that he in any way joined "the permanent, domestic" unit comprised of his father and stepmother. Rather, the evidence indicates that Argenbright was in the process of starting his own "unit of permanent and domestic character" with his pregnant girlfriend at the Churchville house when the accident occurred. His intent (as objectively manifested) was to be a resident of the Churchville house and a member of his own household.[6]

---

[6] Argenbright argues that when he signed the lease on the Churchville house he intended to "test the waters" before deciding if he would live there permanently. Nevertheless, he set up utility

6

Nevertheless, Argenbright contends that, on the date of the accident, he was a member of his father's household and thus an insured because he (1) stayed at his father's house when he was not staying elsewhere, (2) has had his own room at his father's house, from his "birth to the present" (Defendant's Supporting Brief ¶ 11), and (3) has a key to his father's house. These facts, however, are simply coincidental to Argenbright's family membership and are no doubt common to many adult children who have established their own "units of permanent and domestic character" and who in no way remain resident members of their parents' households. Here, the uncontradicted evidence establishes that Argenbright was not a resident member of his father's household on the date of the accident. Accordingly, the court finds that he was not an insured under Hartford's policy, and accordingly, grants Hartford's motion for summary judgment.

### III.

For the reasons stated, the court grants Hartford's motion for summary judgment.

**ENTER:** This 17th day of June 2010.

UNITED STATES DISTRICT JUDGE

---

accounts in his name, furnished the house, and moved his personal belongings there. He also began giving the Churchville address as his permanent address before the accident, and on the night of the accident, he gave that address to the police and his health care providers.